UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MONTEREY AT MALIBU BAY            Case No.: 1:20-CV-24587
CONDOMINIUM ASSOCIATION, INC.,

    Petitioner,

v.

EMPIRE INDEMNITY INSURANCE
COMPANY,

    Respondent.
_____/

## PETITION FOR DECLARATORY RELIEF

COMES NOW, the Petitioner, Monterey at Malibu Bay Condominium Association, Inc. (hereinafter "Petitioner"), and hereby files this "Petition" for declaratory relief against the Respondent, Empire Indemnity Insurance Company (hereinafter "Respondent"), and states as follows in support thereof.

## PARTIES, JURISDICTION, VENUE

1. The Petitioner, a condominium association that secured and maintained the at issue "Policy" of insurance for 30 condominium buildings, is a duly and lawfully registered corporate entity as required by Florida law, with its principal place of business in Florida.

2. The Respondent, who issued and maintained the Policy for the benefit of the Petitioner, is a foreign corporate entity that is duly registered in Oklahoma and maintains its principal place of business in Illinois. *See* Policy attached hereto as Exhibit "A".

3. Thereby, and coupled with the consideration that this Petition relates to a covered claim in which the amount in controversy exceeds $33,000,00.00, the Petitioner respectfully invokes this Court's jurisdiction in accordance with 28 U.S.C. § 1332.

4. Venue is proper before this Court since the "Insured Condominiums" are located at 34 NE 9th Drive, Homestead, Florida 33033 ("Property").

5. Although the Respondent accepted coverage for the at issue "Covered Claim," this Petition for declaratory relief arises from certain Policy conditions and provisions which have left the Petitioner in doubt as to its rights and obligations under the Policy.

## OPERATIVE FACTS AND POLICY PROVISIONS

6. At all times material hereto, which include September 10, 2017 to present, in consideration of a premium paid for by the Petitioner, there was in full force and effect a Policy that is attached hereto and incorporated by reference as *Exhibit "A"*.

7. Per the terms of the Policy and governing law, the Respondent was legally obligated to investigate and adjust visible and latent damages that the Petitioner reported as having arisen after the Insured Condominiums were exposed to heavy wind and rain in association with Hurricane Irma, which made landfall on or about September 10, 2017.

8. Although the Petitioner had a duty to report the cause of loss to the best of its knowledge, the Respondent was legally charged with investigating and adjusting the claimed damages per the Policy which generally, and subject to the Respondent evidencing an exclusion or payment limitation, provided coverage for any direct physical damages that arose during the Policy period.

9. The operative coverage and payment provisions per the Policy are set forth below.

   **A. Coverage**

   We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
   *Exhibit A, Page 1 of 14 CP 00 17 06 07*
   . . . .
   **A. Covered Causes of Loss**

> When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:
> 1. Excluded in Section **B**., Exclusions; or
> 2. Limited in Section **C**., Limitations; that follow.
> *Exhibit A, Page 1 of 10 CP 10 30 06 07*
> . . . .
> **8. Valuation**
> We will determine the value of Covered Property in the event of loss or damage as follow:
> a.  At actual cash value as of the time of loss or damage, except as provided in b. and c. below.
> *Exhibit A, Page 11 of 14 of CP 00 17 06 07*
> . . . .

10. On October 24, 2018, and after completing its investigation and adjustment of the claim, the Respondent accepted coverage in part, and denied coverage in part, for the damages presented by the Petitioner. *See composite Exhibit "B"*

11. The Petitioner's coverage decision was said to be predicated on an expert report that is dated October 19, 2018. *See Exhibit B*.

12. Thereafter, and drawing exception with the Respondent's coverage assessment and damages valuation, the Petitioner presented a sworn proof of loss on March 6, 2019. *See* Composite Exhibit "C", which includes Petitioner's sworn proof of loss and corresponding estimate of damages.

13. In response thereto, and on April 5, 2019, the Respondent advised that the Petitioner that it was not accepting or rejecting the supplemental claim since it need to further assess the damages in question. *See Exhibit "D."*

14. In response to a breach of contract suit (hereinafter "Monterey I") that the Petitioner has since dismissed on the basis that the Respondent refused to render a coverage decision in relation to the supplemental claim and maintained the defense that the suit was premature,

3

on August 27, 2019 the Petitioner set forth in pertinent part the following affirmative defense. *See Exhibit "E," pg. 4.*

> At the time of filing of this action, Empire's investigation of the claim remained ongoing and a final coverage determination had not yet been made. Specifically, on March 6, 2019, more than six months after Empire inspected the insured premises in connection with this claim, Monterey submitted a damage estimate in the amount of $34,410,280.73. Monterey's estimate included alleged areas of damage that were not previously claimed or reported by Monterey or its representatives. Monterey subsequently filed suit in connection with the subject claim on or about March 22, 2019 without first allowing Empire an opportunity to inspect these newly claimed areas of damage at Monterey's property. Indeed, to date, Monterey has continued to refuse to allow Empire to inspect these newly claimed areas of damage at Monterey's property. As a result, a coverage determination on these new categories of claimed damage has not yet been made. Accordingly, the instant action is not ripe and must be dismissed. Empire is therefore entitled to judgment on this basis.

15. In conformance with the affirmative defenses, and on April 10, 2020, the Respondent's sworn answers to Petitioner's interrogatories in Monterey provide in pertinent part as follows. *See Exhibit "F", pg. 9 of 14, CP 00 17 06 07.*

    **Response to Interrogatory No. 15:**
    Empire states that, upon information and belief, the subject "loss" occurred on or about September 10, 2017. However, Monterey commenced suit prior to Empire having the opportunity to complete its investigation and adjustment of the claim. Because discovery remains ongoing, Empire reserves the right to amend and/or supplement this response to the extent that additional information concerning this matter is obtained through discovery or otherwise.

16. At said time, and per the Respondent's counsel representations to the Court that the suit was premature per a pending request for a reinspection of the insured property, the Respondent had already been provided full access to reinspect and readjust the supplemental claim per a Court Order that was entered on January 15, 2020.

17. In the months that followed the Respondent's April 10, 2020 answers to interrogatories as stated, the Petitioner's former law firm was in the process of being dissolved and the Petitioner was forced to search for a substitute law firm.

18. With that said, and on July 24, 2020, undersigned counsel's Firm appeared as counsel of record in Monterey 1.

19. At the onset of being retained, and per the Respondent's attestations that the suit was not ripe in Monterey 1 per the pending coverage decision that had yet to be made, undersigned counsel conferred with the Respondent's counsel in relation to whether it had any good faith basis to reject the Petitioner's proposal to dismiss the breach of contract action without prejudice so that: (1.) the Respondent could render a coverage decision as to the amount of damages presented in the supplemental claim; and (2) provided that a meaningful exchange of information did not allow the parties to reach an agreement as to the amount of monies owed in relation to the supplemental claim for which the coverage decision was pending, the parties could thereby decide at said point whether they wished to exercise their respective rights to draw prompt and efficient resolution per the Policy's condition which as follows.

> With respect to a loss to commercial residential property, the following replaces the Appraisal Condition:
> Mediation Or Appraisal
> If we and you:
> …
> B. Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
> 1. Pay its chosen appraiser; and
> 2. Bear the other expenses of the appraisal and umpire equally.
> *See Exhibit A, pg. 46.*

20. Without providing any substantive, logical or good faith basis for rejecting the proposed means of resolution as offered by the Petitioner, the Respondent rejected the Petitioner's

proposal and otherwise opposed Petitioner's voluntary dismissal without prejudice in Monterey I. Attached hereto as *composite Exhibit "G"*, this Court will find the corresponding filings of the parties in Monterey 1 and the Court's Order of October 15, 2020, which *de facto* rejected the Respondent's inherently and invariably inconsistent and deceptive position that the voluntary dismissal without prejudice was not the equitable means of drawing resolution in relation to the supplemental claim.

21. Further evidencing the Respondent's patent disregard for the doctrines of judicial and equitable estoppel, in a secondary suit for declaratory relief that was filed by the Petitioner on August 21, 2020 (hereinafter "Monterey II"), and on October 8, 2020 the Respondent filed a Motion to Dismiss (*See* Exhibit H) which argued, *inter alia,* that the dispute over the supplemental claim was governed by the Monterey I breach of contract that it had repeated asserted and attested was not ripe for adjudication since a coverage decision had yet to be made.

22. Even as of the date of this Petition, and in direct conflict with Florida Law which governs, the Petitioner remains in doubt as to its right and obligations under the Policy per the Defendant's Respondent refusal to provide the Petitioner with any specific, delineated, substantive or coherent disclosures as to whether it is genuinely disputing the scope and value of the supplemental claim and the ensuing damages that the Respondent is aware are accruing as a consequence of its refusal to perform per the Policy and governing Florida Law.

23. More specifically as to the latter, and amplifying the consequential inequities and damages which render this Petition necessary, exigent and ripe, the Respondent's strategic avoidances and delays have consequentially given rise to hazardous and toxic mold/bacteria

conditions that serve to create a health risk for the residents of the insured property that are also at risk of being further harmed in relation to COVID-19.

## PETITION FOR DECLARATORY RELIEF

24. The Petitioner adopts and realleges paragraphs 1 through 23 as fully alleged herein.

25. For the reasons specified *supra*, and pursuant to Florida Statute § 86.011, the Petitioner remains in doubt as to its rights and obligations per the Policy of insurance, and thereby seeks declaratory relief as follows.

    (1.) Whether the Respondent, who asserted that it needed to reinspect the Insured Condominiums in order to assess the scope, cause and value of the supplemental claim as presented by the Petitioner in its sworn proof and loss and otherwise, has an obligation to either extend coverage in part or in whole, or if applicable in part or in whole, provide specific, meaningful, delineated and substantive disclosures in relation to any Policy exclusions or payment limitations which serve to limit or exclude payment of the claim.

    (2.) Whether in accordance with the Policy and governing law, the Respondent has an obligation to engage the Petitioner in a meaningful exchange of information in relation to any dispute that it may have as to scope, cause or value of the Supplemental Damages, and thereafter submit to the Petitioner's demand for appraisal if in fact a genuine disagreement exists as to the amount of the loss.

    (3.) Whether pursuant to the doctrine of waiver, equitable estoppel, judicial estoppel, or unclean hands, the Respondent has forfeited Policy conditions, and/or the right to invoke doctrines of equity as a defense to the claim, including

     the Petitioner's demand for appraisal in relation to any disagreement that may genuinely exist as to the amount of the covered loss.

   (4.) Whether the Respondent has an immediate obligation to issue payment to the Petitioner for any direct physical loss to property that arose during the time period in which it maintained and/or renewed the Policy in question, and for which, it cannot competently evidence as being excluded or limited.

26. As a direct and proximate result of the foregoing conflicting positions of the parties as presented, there is an actual and *bona fide* dispute between the parties which requires a present need for judicial determination as stated.

27. The Petitioner has been obligated to retain the undersigned attorney for the prosecution of this action and is entitled to an award of reasonable attorney's fees and costs pursuant to Florida Statutes §§ 627.428 and 57.041

  **WHEREFORE**, the Petitioner respectfully requests that this Honorable Court enters Final Judgment which provides for the following relief:

i. A declaration of the rights and/or obligations of the Petitioner and the Respondent as specified in paragraph 18, or otherwise deemed necessary and equitable by this Honorable Court;

ii. Pursuant to Florida Statutes §§ 627.428, 92.231 and 57.041, an award of reasonable attorneys' fees and costs for obtaining any judgment, order or decree in the Petitioner's favor; and/or

iii. Any other relief the Court deems just and proper.

## PETITIONER'S DEMAND FOR JURY TRIAL

The Petitioner, by and through undersigned counsel, hereby respectfully demands a jury trial on all issues so triable.

Dated: November 6, 2020

        **Respectfully submitted,**

        **FONT & NELSON, PLLC**
        *Attorneys for Petitioner*
        200 S. Andrews Avenue, Suite 501
        Fort Lauderdale, FL 33301
        Tel: (954) 248-2920; Fax: (954) 248-2134
        Primary E-mail: Pleadings@FontNelson.com
        Secondary E-mail: SRandolph@FontNelson.com

        By: /s/ *Sonya P. Randolph*
            **JOSE P. FONT, ESQ.**
            Florida Bar #: 0738719
            **SONYA P. RANDOLPH, ESQ.**
            Florida Bar #: 1007710