# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 20-cv-24587-BLOOM/Otazo-Reyes

MONTEREY AT MALIBU BAY
CONDOMINIUM ASSOCIATION, INC.,

      Plaintiff,

v.

EMPIRE INDEMNITY INSURANCE
COMPANY,

      Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO EXCLUDE THE OPINION TESTIMONY OF CESAR MARIN AND SCOTT THOMAS AND CERTAIN FACT TESTIMONY OF SCOTT THOMAS

**THIS CAUSE** is before the Court upon Defendant Empire Indemnity Insurance Company's ("Defendant") Motion to Exclude the Opinion Testimony of Cesar Martin and Scott Thomas and Certain Fact Testimony of Scott Thomas, ECF No. [97] ("Motion"), filed on February 16, 2022. Plaintiff Monterey at Malibu Bay Condominium Association, Inc. ("Plaintiff") filed a Response in Opposition, ECF No. [110] ("Response"), on March 14, 2022, to which Defendant filed a Reply, ECF No. [118] ("Reply"), on April 4, 2022. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion is granted in part and denied in part consistent with this Order.

## I. BACKGROUND

### A. *Monterey I*

On March 22, 2019, Plaintiff initiated its first action against Defendant in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. *See Monterey at Malibu Bay Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 1:19-cv-23353-LFL (S.D. Fla. 2019), ECF No. [1-2] at

2-5 ("*Monterey I*"). On August 12, 2019, Defendant removed the case to federal court. *Monterey I*, ECF No. [1]. Plaintiff's Amended Complaint asserted a single count against Defendant for breach of contract, alleging that Plaintiff entered into an insurance policy agreement ("Policy") with Defendant for coverage of Plaintiff's condominium ("Property"). *Monterey I*, ECF No. [1-2] at 2-5. Plaintiff alleged that the Property was damaged during Hurricane Irma and that the damage incurred was a covered loss under the Policy. After receiving Plaintiff's coverage claim, Defendant made a partial payment, and Plaintiff alleged that Defendant breached the Policy by failing to fully indemnify Plaintiff for the total amount of its damages. *Id.* at 3. On August 27, 2020, Plaintiff filed a motion seeking voluntary dismissal of *Monterey I* without prejudice pursuant to Fed. R. Civ. P. 41(a)(2), which Defendant opposed. *Monterey I*, ECF Nos. [64], [67]. On October 15, 2020, Magistrate Judge Louis granted Plaintiff's motion and dismissed the case over Defendant's objection. *Monterey I*, ECF No. [87] at 7.

### B. *Monterey II*

On August 22, 2020, while *Monterey I* was still pending, Plaintiff filed a Petition for Declaratory Relief against Defendant, which was premised upon the same Policy, the same Property, the same loss resulting from Hurricane Irma, and the same ultimate amount of claimed damages. *Monterey at Malibu Bay Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 1:20-cv-23506-KMW (S.D. Fla. 2020), ECF No. [1] ("*Monterey II*"). On October 29, 2020, however, the court in *Monterey II sua sponte* dismissed the case without prejudice after the parties failed to timely file their joint conference report as ordered. *Monterey II*, ECF No. [19].

### C. *Monterey III*

Turning to the instant action, on November 6, 2020, Plaintiff re-filed its Petition for Declaratory Relief against Defendant, which asserted the same claims as those raised in *Monterey II*, seeking clarification of its rights under the Policy. ECF No. [1] ("*Monterey III*"). In

the instant Motion, Defendant challenges Plaintiff's non-retained, hybrid witnesses: Cesar Marin ("Mr. Marin"), who is Plaintiff's public adjuster, and Scott Thomas ("Mr. Thomas"), who is Plaintiff's physical damage appraiser. *See* ECF No. [97]. Defendant argues that Mr. Marin is not qualified to render a causation opinion, Mr. Marin's methodology is unreliable, and Mr. Marin's opinions are not helpful. *See id*. Defendant also argues that Mr. Thomas' methodology is unreliable, and Mr. Thomas' opinions are not helpful. *See id.* Plaintiff opposes the Motion, arguing that Mr. Martin and Mr. Thomas are qualified, their methodologies are reliable, and their opinions are helpful. *See* ECF No. [110].

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the court must engage in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters the expert intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d

1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

As for the qualification prong, an expert may be qualified in the Eleventh Circuit "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.* (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. Jun. 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[1]

Next, when determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261-62 (citation and internal quotation marks omitted). To make this determination, the district court typically examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

is generally accepted in the scientific community." *Id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). The Eleventh Circuit has emphasized that the four factors above are not exhaustive, and a court may need to conduct an alternative analysis to evaluate the reliability of an expert opinion. *See id.* at 1262 ("These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion."). Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *Id.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

The final element, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Id.* (quoting *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations and internal quotation marks omitted). Thus, the district court cannot

exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7.

On the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Est. of Tessier*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

## III.   DISCUSSION

### A.  Mr. Marin

Plaintiff's public adjuster Mr. Marin is expected to offer a scope of damages opinion that all the roofs at the Property need to be replaced and a causation opinion that Hurricane Irma caused the damages. *See* ECF No. [97] at 2; *see also* ECF No. [97-1] at 2-3. Defendant challenges Mr. Marin's qualifications, reliability, and helpfulness. The Court addresses each argument in turn.

### 1.  Qualifications

Defendant argues that Mr. Marin is not qualified to give his expert opinion on causation for several reasons.[2] According to Defendant, Mr. Marin is a high school graduate, has not taken

---

[2] By expressly arguing that Mr. Marin is not "qualified to provide opinion testimony *regarding causation*," ECF Nos. [97] at 3 (emphasis added), [118] at 2 (emphasis added), Defendant effectively concedes that Mr. Marin is qualified to give his expert opinion on the scope of damages. Upon a review of Mr. Marin's experience as a public adjuster, the Court considers Mr. Marin to be sufficiently qualified to give his expert opinion on the scope of damages.

any specialized trade classes, and has never qualified as an expert in state or federal court. *See* ECF No. [97] at 4. While Mr. Marin has a public adjuster's license, Mr. Marin only completed a weekend course at a local community college and passed an exam to get his license. *See id.* Mr. Marin did not do an apprenticeship or receive any formal training on roof inspections or building inspections. *See id.* Mr. Marin has never adjusted a claim on behalf of an insurance company, never been employed by an insurance company, and has never been trained by the insurance industry on how to adjust a claim. *See id.* Further, Defendant notes that Mr. Marin does not have any specific training on inspections of cement tile roofs, which is the type of roof at issue in this case. *See id.* at 4-5.

Plaintiff responds that Mr. Marin is qualified to offer his expert opinion. *See* ECF No. [110] at 3. According to Plaintiff, Mr. Marin's affidavit establishes that Mr. Marin has evaluated wind roof damage on thousands of residential roofs and hundreds of commercial or condo association roofs. *See id.*; ECF No. [110-1] ¶ 2. Plaintiff also argues that Defendant's counsel superficially explored Mr. Marin's experience during Mr. Marin's deposition before claiming that Mr. Marin was not qualified. *See* ECF No. [110] at 3.

The Court agrees with Plaintiff. Based on a review of Mr. Marin's curriculum vitae, s*ee* ECF No. [97-1] at 6-7, the Court determines that Mr. Marin is qualified to offer a causation opinion. Mr. Marin holds a public adjuster's license from not only Florida but also Georgia, South Carolina, North Carolina, Colorado, and Oklahoma. *See id*. Mr. Marin has also conducted numerous roof inspections related to seven (7) other hurricanes. ECF No. [110-1] ¶ 2. The fact that Mr. Marin has not previously testified as an expert in a court case is not determinative. S*ee La Gorce Palace Condo. Ass'n, Inc. v. Blackboard Specialty Ins. Co*., No. 19-24016-CIV, 2022 WL 479877, at *6 (S.D. Fla. Feb. 16, 2022) (holding that an expert without a public adjuster's license and without any prior experience testifying as an expert still possessed the necessary

qualifications). To the extent that Defendant argues that Mr. Marin has not been trained in cement tile roofs, the Court reiterates that "[a]n expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *J.G.*, 2013 WL 752697, at *3 (citing *Maiz*, 253 F.3d at 665). Mr. Marin is sufficiently experienced in roof inspections in general such that he is qualified to offer an opinion on cement tile roofs even if he does not have specific expertise in cement tile roofs. As such, Mr. Marin is qualified to give his expert opinion on causation.[3]

### 2. Reliability

#### a. Damages Opinion

First, in regard to Mr. Marin's scope of damages opinion, Defendant submits that Mr. Marin provided no bases for his opinion. *See* ECF No. [97] at 5. According to Defendant, Mr. Marin did not prepare a report,[4] did not take notes during his inspection of all thirty (30) buildings on the Property, did not have copies of post-Irma repair invoices at the time of his inspection, was never told about pre-Irma repair and maintenance issues on the roofs, and did not inspect the interior of the Property. *See id.*

Plaintiff responds that Mr. Marin performed several inspections of each of the Property's thirty (30) buildings and Mr. Marin's opinion was appropriately based on his inspection of roof tiles that were broken, chipped, de-bonded, and damaged by wind-borne debris strikes. *See* ECF No. [110] at 2-3. In his affidavit, Mr. Marin asserts that he conducted uplift tests, and that "[i]t is

---

[3] As a final note, Defendant's reliance on *Al Luch v. Scottsdale Ins. Co.*, No. 17-21507-CIV, 2018 WL 11353463 at *7 (S.D. Fla. Feb. 16, 2018), is unavailing. In *Al Luch*, the expert was not qualified to offer his expert opinion on causation because the expert conceded that his company was not involved determining causation. *See id.* In contrast, Mr. Marin has not made a similar concession.

[4] According to Fed. R. Civ. P. 26(a)(2)(B), expert disclosures "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Defendant does not seek to exclude Mr. Marin for his failure to submit a written report, presumably because Mr. Marin is a "non-retained" witness. ECF No. [97] at 1.

an industry standard to perform uplift tests to evaluate wind damage to a roofing system." *See* ECF No. [110-1] ¶ 3. *See* ECF No. [110] at 6 (citing ECF No. [95-6] at 58). Plaintiff notes that in *El-Ad Residences at Miramar Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co.*, the court determined that uplift tests of roof tiles were a proper method to determine the extent of roof damage caused by a hurricane. *See* 09-CV-60723, 2011 WL 13174642, at *5 (S.D. Fla. Feb. 23, 2011).

The Court agrees with Plaintiff that Mr. Marin used a reliable methodology with respect to his scope of damages opinion. Defendant does not meaningfully dispute that Mr. Marin conducted uplift tests, or that Mr. Marin conducted multiple inspections of all thirty (30) roofs. *See* ECF Nos. [97] at 5, [97-1] at 2-3, [110-1] ¶ 3. The Court considers such methodology to be sufficiently reliable. *See El-Ad Residences*, 2011 WL 13174642, at *5.[5] Furthermore, in *El-Ad Residences*, the court found that a lack of field notes was not determinative of an expert's reliability, and that the failure to take notes went to the weight of the expert's testimony rather than its admissibility. *See id.* Similarly in this case, the lack of notes goes to the weight of Mr. Marin's testimony, not the reliability of Mr. Marin's methodology or the admissibility of his opinion. Defendant's argument that Mr. Marin did not consider other materials also goes to the weight of Mr. Marin's opinion on damages, rather than its admissibility. *See Quiet Tech.*, 326 F.3d at 1345. ("Vigorous cross-examination of a study's inadequacies allows the jury to appropriately weigh the alleged defects and reduces the possibility of prejudice."). As such, Mr. Marin's methodology with respect to his damages opinion is reliable.

---

[5] In its Reply, Defendant notes that Mr. Marin's claim that he performed uplift tests is inconsistent with Mr. Marin's deposition testimony that it was a "no-brainer" that the roofs were compromised. *See* ECF No. [118] at 3. However, Mr. Marin's claim that it was a "no-brainer" that the roofs were compromised does not equate to Mr. Marin claiming that he did not perform uplift tests. Thus, Mr. Marin's claim that he performed uplift tests is not inconsistent with his deposition testimony.

### a. Causation Opinion

Next, Defendant requests that the Court exclude Mr. Marin's causation opinion because it is based on unreliable methodology. *See* ECF No. [97] at 6. More specifically, Defendant argues Mr. Marin did not review any pre-Irma repair or maintenance documents or inspect the interior of the buildings before rendering his opinion that all the roofs needed to be replaced because of Hurricane Irma. *See id.* In support of its argument, Defendant relies on two cases. In *Dias v. GeoVera Specialty Ins. Co.*, the court concluded that a public adjuster was unreliable because the public adjuster opined that the roof damage was due to wind on a certain date without consulting weather data from that date. *See* 543 F. Supp. 3d 1282, 1287 (M.D. Fla. 2021). The public adjuster simply presumed the date of loss from the date provided by the insured and the insurance company. *See id.* In *Greater Hall Temple Church of God v. S. Mut. Church Ins. Co.,* the Eleventh Circuit held that the district court properly excluded three expert witnesses' opinions. *See* 820 F. App'x 915, 920 (11th Cir. 2020). One expert, Mr. John Kern, was excluded in part because he inspected the subject building about six (6) months after the date of loss and opined that most of the roof damage was due to the hurricane based on his "opinion as a professional engineer with lots of roof experience." *See id.* at 918. Defendant argues that because Mr. Marin similarly failed to consider the relevant documents, only inspected the exterior of the Property one (1) year after Hurricane Irma, and relied solely on his experience, his methodology with respect to his causation opinion is unreliable. *See* ECF No. [97] at 6.

Plaintiff does not dispute that Mr. Marin failed to review pre-Irma maintenance documents or that Mr. Marin failed to inspect the interior of the buildings. *See generally* ECF No. [110]. Plaintiff instead argues that Defendant's experts, Mr. David Boughton ("Mr. Boughton") and Mr. James Brown ("Mr. Brown"), also did not review the documents or inspect the interior of the buildings. *See id.* at 5-6.

Defendant replies that Defendant has not retained Mr. Boughton as an expert in this case. *See* ECF No. [118] at 3-4. As such, any comparison between Mr. Marin and Mr. Boughton is inapposite. Further, Mr. Brown, who has been retained as an expert, specifically testified that a review of historical, pre-loss documentation was necessary and that he did consider such pre-loss documentation. *See id.* at 4 (quoting ECF No. [95-22] at 22).

The Court first notes that Plaintiff's argument regarding Defendant's experts is inapposite because Defendant's experts are not at issue in this Motion. Putting aside Plaintiff's argument regarding Defendant's experts, the Court notes that the material question is whether Mr. Marin employed a reliable methodology. Although Defendant argues that Mr. Marin did not review pre-Irma documentation, Mr. Marin's deposition transcript suggests otherwise. Mr. Marin indicated that he reviewed pre-Irma invoices for the roof repairs. *See* ECF No. [95-6] at 33 ("Well, they sent me [pre-Irma invoices], right? That's the only roofing issues that they've had according to my knowledge, ma'am."). In addition, as noted above, Mr. Marin conducted visual inspections and uplift tests, which corroborated his causation opinion. *See* ECF No. [97-1] at 2-3. Defendant's reliance on *Dias* and *Greater Hall* are also unavailing. Unlike the expert in *Dias*, 543 F. Supp. 3d at 1287, who attributed the cause of the damage to wind on a date provided to him by the parties without independently consulting weather data, Mr. Marin researched wind-speed information prior to performing his roof inspections. *See* ECF No. [95-6] at 59. In addition, unlike the expert Mr. John Kern in *Greater Hall*, Mr. Marin did not rely on his "experience" alone. 820 F. App'x at 920. In sum, Mr. Marin's methodology for his causation opinion is reliable.

### 3. Helpfulness

Defendant argues that "Mr. Marin's testimony regarding Monterey's damage estimate would be duplicative and cumulative of the testimony that Monterey intends to elicit from Scott Thomas . . . ." *See* ECF No. [97] at 6. Defendant also argues that Mr. Marin's opinions will not

assist the trier of fact because they offer nothing more than what Plaintiff's counsel can offer at closing argument. *See* ECF No. [118] at 5. Plaintiff does not respond to Defendant's arguments on this matter.

The Court is not persuaded by Defendant's argument because Mr. Marin is expected to testify regarding the scope of damages – namely, that all roofs need to be replaced – not the cost of replacing the roofs. Mr. Thomas, on the other hand, is expected to testify regarding the cost of replacement derived from Mr. Thomas' own calculations using Xactimate, which provides dollar figure estimates. *See* ECF No. [97-1] at 4. Therefore, Mr. Marin's opinion on the scope of damages will not be cumulative of Mr. Thomas' valuation opinion. Further, the Court is not persuaded that Mr. Marin's opinions regarding the scope of damages and causation will not be helpful because the common layperson is unaware of the significance of damaged tiles and would be unable to interpret results from uplift tests. As such, Mr. Marin's expert opinions would be helpful to the trier of fact. Thus, to the extent that Plaintiff intends to introduce Mr. Marin's expert opinions regarding the scope of damages and causation, the Court determines that such opinions will be helpful.[6]

### B. Mr. Thomas

Plaintiff disclosed Mr. Thomas, a licensed adjuster, to testify at trial. *See* ECF No. [97-1] at 3-4. According to Plaintiff, Mr. Thomas "was retained by Mr. Marin to assist him in the submission of the claim in Mr. Marin's capacity as a public adjuster." *Id.* at 3. Mr. Thomas is expected to give his opinions on seven topics:

---

[6] As a final note, the Court recognizes that Defendant mentions in a footnote that Mr. Marin has entered into a contingent fee agreement with Plaintiff. *See* ECF No. [97] at 5, n.2. Defendant, however, has not meaningfully argued that Mr. Marin should be excluded based on his fee arrangement. The court in *Garcia v. Scottsdale Ins. Co.*, No. 18-20509-CIV, 2019 WL 1491872, at *1 n.1 (S.D. Fla. Apr. 4, 2019), questioned the propriety of a similar arrangement but did not strike the expert from offering his testimony on that basis. As such, Defendant may cross-examine Mr. Marin regarding his fee arrangement, but the Court declines to exclude Mr. Marin based on his fee arrangement.

(1.) the scope of Hurricane Irma Damages that were assessed at the time that the Respondent initially adjusted the claim;

(2.) per the stated assessment of the scope of damages that were deemed to be related Hurricane Irma, the valuation of damages as further delineated in the IClaim estimates that were served as part of the Petitioner's sworn proof of loss that was submitted to the Respondent in March of 2019;

(3.) the fact that as of March of 2019, there was an established disagreement with the Respondent in relation to the scope and value of Hurricane Irma damages that the Respondent had already deemed covered and excluded in part per its adjustment of the loss that had already been concluded;

(4.) his specialized training, education and experience in relation to the adjustment of hurricane related claims, including Hurricane Irma and the impact of wind and rain that caused the damages that he partook in the adjustment of;

(5.) by way of his own physical and visual observations, coupled with the physical and visual observations of others who participated and assisted in the adjustment of the claim, the principles and methods that were utilized to duly adjust the loss by the parties;

(6.) his review and dispute with MKA's Coverage Spreadsheet and estimate of covered damages; and

(7.) as further described below, his development of the stated facts and opinions while working in conjunction with Monterey's retained public adjuster, Mr. Marin.

*See id.* 3-4.

Defendant argues that Mr. Thomas' valuation and damages opinions – specifically, Opinions 1, 2, 5, 6, and 7 – are based on unreliable methodology. *See* ECF No. [97] at 8-10. Defendant also avers that Mr. Thomas' underwriting and claims handling opinions are untimely and irrelevant. *See id.* at 10-13. Next, Defendant submits that the Court should exclude Mr. Thomas' opinion that there was an established disagreement between the parties as of March 2019 – specifically, Opinion 3 – because Mr. Thomas retracted that particular opinion at his deposition. *See id.* at 13-14. Finally, Defendant argues that Mr. Thomas' expert testimony regarding his prior work on behalf of Zurich and its affiliated companies should be excluded because they are prejudicial and irrelevant. *See id.* at 14-16. The Court addresses each argument in turn.[7]

---

[7] The Court notes that while Defendant makes passing references to Mr. Thomas' "causation" opinion and the fact that Mr. Thomas did not "exclud[e] alternative causes of roof damages," ECF Nos. [97] at 8, [118] at 9, Defendant does not expressly identify any of Mr. Thomas' opinions as causation opinions or meaningfully challenge Mr. Thomas' opinions for being causation opinions that are based on unreliable methodology. Mr. Thomas' second opinion – "*per the stated assessment of the scope of damages that were*

### 1.   Qualifications

As an initial matter, Defendant does not meaningfully contest Mr. Thomas' qualifications but briefly notes, while challenging the reliability of Mr. Thomas' methodology, that Mr. Thomas "lacks both the *expertise* and reliable underlying data." ECF No. [97] at 9 (emphasis added). Plaintiff responds that during Mr. Thomas' deposition, Mr. Thomas explained that he has extensive experience working at Nationwide Mutual Insurance Company and the adjusting firm Cunningham Lindsey. *See* ECF No. [97-1] at 8. Plaintiff also submits that Mr. Thomas attended adjuster schools, such as EFI Global and Vale Training Solutions. *See* ECF No. [110] at 7. The Court determines, based on a review of Mr. Thomas' curriculum vitae, *see* ECF No. [97-1] at 8-9, that Mr. Thomas is qualified by training and experience to opine on the matters he has been disclosed to opine upon.

### 2.   Reliability

Defendant requests that Mr. Thomas' valuation and damages opinions be excluded because they are not the product of reliable methodology. Defendant's central challenge is that Mr. Thomas' opinions are based on his assessment of only six (6) of the thirty (30) roofs on the Property. *See* ECF No. [97] at 8. Defendant also argues that Mr. Thomas' assessment of the Property consisted of using his hands to test the cement tiles and that Mr. Thomas did not provide any measurements. *See id.* Mr. Thomas did not calculate wind force at the time of the storm. *See id.* Mr. Thomas examined the interiors of only a "couple" of Plaintiff's approximately 240 units.

---

*deemed to be related Hurricane Irma*, the valuation of damages as further delineated in the IClaim estimates that were served as part of the Petitioner's sworn proof of loss that was submitted to the Respondent in March of 2019" – indicates that Mr. Thomas assumes that the damages were the result of Hurricane Irma, rather than opining as to causation. ECF No. [97-1] at 3 (emphasis added). It appears, therefore, that Plaintiff does not intend to have Mr. Thomas offer a causation opinion. Nonetheless, to be thorough, the Court notes that Plaintiff has failed to satisfy its burden of laying the proper foundation for Mr. Thomas to introduce a causation opinion. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005). For instance, Plaintiff does not establish that Mr. Thomas performed a differential analysis accounting for alternative causes of roof damage or reviewed pre-Irma documentation. As such, Mr. Thomas will not be permitted to offer any causation opinions.

*See id.* Mr. Thomas never identified specific leaks at the Property. *See id.* Mr. Thomas did not review the post-Irma repair invoices prior to his inspection. *See id.* Additionally, Mr. Thomas only "referenced" a roof inspection report from Top Seal and various industry articles. *See id.* Also, but for the thirty (30) identical estimates, Mr. Thomas did not provide a written report[8] or notes to support his opinions. *See id.* Mr. Thomas stated that he relied on "good commonsense [*sic*]." *Id.* at 9 (quoting ECF No. [95-8] at 127). Further, Mr. Thomas stated that his estimates of the loss were derived without the benefit of "expert . . . aid." ECF No. [118] at 7 (quoting ECF No. [1-5] at 2). Lastly, Defendant stresses that Mr. Thomas relied on Mr. Marin's purportedly unreliable observations as a basis for his opinions. *See* ECF No. [97] at 10. As such, Defendant seeks to preclude Mr. Thomas' valuation and damages opinions.

Plaintiff responds that Defendant takes a brief excerpt from Mr. Thomas' lengthy deposition testimony to misrepresent Mr. Thomas' methodology and falsely claim that Mr. Thomas only used his "common sense" rather than reliable methods. *See* ECF No. [110] at 6. Plaintiff argues that Mr. Thomas appropriately "relied upon Mr. Marin's inspections of the roofs, his own inspections of Monterey's buildings, the Top Seal report, photographs taken by Mr. Marin of the roofs, as well as other documentation in Mr. Thomas' file." *See id.* at 6-7 (citing ECF No. [95-12] at 50-52). Mr. Thomas also conducted his own uplift tests. *See id*. Lastly, Plaintiff reiterates its prior argument that Defendant's own experts, including Mr. Boughton, did not inspect the interior of the Property, review post-Irma repair invoices, or perform wind force calculations. *See id.* at 7.

---

[8] As noted above, according to Fed. R. Civ. P. 26(a)(2)(B), expert disclosures "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Defendant does not seek to exclude Mr. Thomas for his failure to submit a written report, presumably because Mr. Thomas was retained by Mr. Marin, not Plaintiff, and therefore not required to submit a written report. *See* ECF No. [97-1] at 3.

As before, the Court first notes that Plaintiff's argument related to Defendant's experts is inapposite because Defendant's experts are not at issue in this Motion. Once again putting aside Plaintiff's argument regarding Defendant's experts, Mr. Thomas' opinions are based on his own inspection of six (6) roofs, the Top Seal report, photographs of the roofs, and other documentation. ECF No. [95-12] at 50-52. In addition, Mr. Thomas used Xactimate, which is a recognized platform to estimate the value of repairs needed. *See* ECF No. [97-1] at 4. Courts have previously determined that Xactimate is a common software program relied on by experts in the insurance industry for cost estimation, and expert testimony based on the use of Xactimate has been admitted in several courts. *See, e.g.*, *Coshap, LLC v. Ark Corp. Member Ltd.*, No. 1:16-CV-0904-SCJ, 2017 WL 9287017, at *5 (N.D. Ga. Dec. 12, 2017) (collecting cases). As such, the Court determines that Mr. Thomas' valuation and damages opinions are reliable.

Mr. Thomas included a disclaimer that his estimates were derived without the benefit of "expert" aid. That disclaimer alludes to the fact that Mr. Thomas did not rely on aid from other individuals and that the opinion is his own, rather than suggesting that he himself is not an "expert." *See* ECF No. [1-5] at 2. In regard to Defendant's argument that Mr. Thomas did not take notes, the Court reiterates that in *El-Ad Residences*, the court found that the lack of field notes was not determinative of the expert's reliability, and that the lack of notes went to the weight of the expert's testimony. *See* 2011 WL 13174642, at *5. As before, the lack of notes goes to the weight of Mr. Thomas' testimony, not its admissibility. Next, the fact that Mr. Thomas' opinion is based partly on information and data from Mr. Marin's inspections of the Property does not make Mr. Thomas' opinions unreliable. As noted above, the Court has already determined that Mr. Marin used reliable methods to form his damages and causation opinions, and experts may rely on the opinions of others to form their own opinions. *See Daubert*, 509 U.S. at 592; *see also AMCO Ins. Co. v. TAF*,

*Inc.*, No. CV 617-022, 2018 WL 4624097, at *11 (S.D. Ga. Sept. 26, 2018) ("The fact that [the expert witness] used information from other sources does not disqualify him as an expert.").

To the extent that Defendant argues that Mr. Thomas extrapolates from his inspection of only six (6) of the thirty (30) roofs in question, the Court notes that Mr. Thomas reviewed photographs from all thirty (30) roofs. *See* ECF No. [95-12] at 52. Further, such a challenge and any related challenge that Mr. Thomas did not conduct other tests or review other documents go to the weight and credibility of his opinions, rather than the admissibility of his opinions. *See Vision I Homeowners Ass'n, Inc.*, 674 F. Supp. 2d at 1325 (quoting *Jones*, 861 F.2d at 662). In sum, Mr. Thomas' valuation and damages opinions are not unreliable.[9]

### 3. Helpfulness

#### a. Underwriting and Claims Handling Opinions

Defendant requests exclusion of Mr. Thomas' underwriting and claims handling opinions because they are untimely and irrelevant. *See* ECF No. [97] at 10-13. According to Defendant, Mr. Thomas' underwriting and claim handling opinions are untimely because they were disclosed during his depositions on January 26, 2022, and February 1, 2022, which occurred after the January 25, 2022, discovery deadline in this case. *See id.* at 12. Defendant also argues that such testimony is irrelevant until the insurer's obligation to provide coverage has been established. *See id.* at 12-13. Plaintiff does not dispute that Mr. Thomas' underwriting and claims handling opinions should

---

[9] Defendant cites several cases to argue that "common sense" is insufficient to satisfy the reliability prong. *See* ECF No. [97] at 9 (citing *Greater Hall Temple Church of God v. Southern Mut. Church Ins. Co.*, 820 F. App'x. 915, 918 (11th Cir. 2020); *Dias v. GeoVera Specialty Ins. Co.*, 543 F. Supp. 3d 1282, 1288 (M.D. Fla. 2021); *Coconut Key Homeowners Ass'n, Inc. v. Lexington Ins. Co.*, 649 F. Supp. 1363, 1371 (S.D. Fla. 2009)). However, those cases are distinguishable from this case. In *Greater Hall*, the expert's opinion was not based on any "science or measurements," but based solely on "common sense" that "anyone" could have used. 820 F. App'x at 919. In *Dias*, the expert offered "no methodology to support his opinion." 543 F. Supp. 3d at 1288. In *Coconut*, the expert did not "undertake any scientific tests." 649 F. Supp. 2d at 1371. In contrast, as noted above, Mr. Thomas relied on other reliable data, including his own uplift tests, not only his common sense.

be excluded. *See generally* ECF No. [110]. As such, Defendant's Motion is granted with respect

to these opinions. Mr. Thomas will not be permitted to offer irrelevant and unhelpful testimony

regarding Defendant's claim handling and underwriting in this case.

### b. March 2019 Opinion

Defendant seeks to exclude Mr. Thomas' third opinion that "as of March of 2019, there

was an established disagreement with [Defendant] in relation to the scope and value of Hurricane

Irma damages that [Defendant] had already deemed covered and excluded in part per its adjustment

of the loss that had already been concluded." ECF No. [97] at 13 (quoting ECF No. [97-1] at 3).

Defendant argues that Mr. Thomas' deposition testimony indicates that the disagreement between

the parties was established four (4) months earlier in November 2018 and that Mr. Thomas

retracted his opinion that there was a disagreement between the parties in March 2019. *See id.* at

14. Plaintiff does not meaningfully respond to Defendant's arguments and merely states that Mr.

Thomas' estimates were provided to Defendant in March 2019 and that Mr. Thomas' testimony

will demonstrate that the parties had a disagreement regarding the scope and value of the damages

as of March 2019. *See* ECF No. [110] at 7-8.

The Court agrees with Defendant. Mr. Thomas' deposition testimony indicates that Mr.

Thomas did not author his opinion regarding the March 2019 date, but that Plaintiff's counsel

authored the date.

> I was doing this over the phone while I was driving, and maybe that's the date
> [Plaintiff's counsel] came up with. I -- I don't know because I wasn't there when
> [Plaintiff's counsel] wrote this. But, again, I believe that [Plaintiff's counsel] – you
> are not going to see that I actually wrote this so if [Plaintiff's counsel] said March
> of '19 maybe that's when he thought I was referring to it. But, regardless, all's I
> can testify to, ma'am, actually and factually is the fact that I provided it on -- on or
> about the 7th of November 2018.

*See* ECF No. [95-12] at 107. It appears from Mr. Thomas' deposition that Mr. Thomas was

unaware of the March 2019 date and that Plaintiff's counsel simply furnished the date. Further,

Mr. Thomas effectively retracted his opinion about the date. An unfounded, retracted opinion is of no help to the trier of fact. As such, Mr. Thomas will not be permitted to opine as to the date of the disagreement.

### c. Prior Work Experience

Defendant argues that Mr. Thomas should be excluded from testifying about his prior work on behalf of Zurich and its affiliated companies. *See* ECF No. [97] at 14-16. Defendant argues that it would be prejudicial to Defendant if the Court were to permit Mr. Thomas to testify regarding his work for the "opposing party." *See id.* at 15 (citing *Saewitz v. Lexington Ins. Co.*, 133 F. App'x. 695, 700 (11th Cir. 2005)).[10] Defendant also argues that Mr. Thomas' references to his prior work for Zurich is irrelevant to Plaintiff's insurance claim in this case. *See id.*

Plaintiff responds that the facts of *Saewitz* are inapposite because in that case the moving party retained an expert whom it later withdrew and the court determined that allowing the opposing party to introduce the withdrawn expert would be unduly prejudicial. *See* ECF No. [110] at 8. Further, Plaintiff argues that Mr. Thomas' prior work experience is relevant to his qualifications as an expert, especially since Defendant disputes whether Mr. Thomas has the requisite qualifications to testify as an expert. *See id.*

The Court agrees with Plaintiff that Mr. Thomas should be permitted to offer testimony on his prior work experience to establish his qualifications. Further, to the extent that Defendant relies on *Saewitz* and suggests that Zurich and its affiliated companies are related to Defendant such that Mr. Thomas' work for Zurich could be considered to be work for the "opposing party," the Court is not persuaded. As Plaintiff correctly argues, the expert in *Saewitz* was retained by one party before being withdrawn and the court did not permit the opposing party to introduce evidence from

---

[10] It is unclear from the record whether Zurich is related to Defendant such that Mr. Thomas' work for Zurich could be construed as work for the "opposing party."

the withdrawn expert. *See* 133 F. App'x. at 700. In contrast, Mr. Thomas is not an expert whom Defendant withdrew, and his work for Zurich does not pertain to the case at hand. However, the Court recognizes that, for the same reason, extensive discussion of Mr. Thomas' prior work for Zurich would be irrelevant and not helpful to the trier of fact. As such, Mr. Thomas will be permitted to discuss his work for Zurich for the limited purposes of establishing his qualifications, but not for any other purpose. The Court will address the exact boundaries of Mr. Thomas' testimony regarding his prior work for Zurich with specific objections to specific testimony in the context of trial so that questions of helpfulness and undue prejudice may be resolved in the proper context.[11]

### d. Valuation and Causation Opinions

Defendant raises, for the first time in its Reply, that Mr. Thomas' valuation and causation opinions are not helpful because they are unrelated to Plaintiff's request for declaratory relief that Plaintiff's insurance claim is ripe for appraisal. *See* ECF No. [118] at 9. However, it is improper to raise an argument for the first time in a reply, and the Court need not consider such arguments. *See, e.g.*, *Herring v. Secretary, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotation marks omitted); *Willis v. DHL Global Customer Sols. (USA), Inc.*, No. 10-62464-CIV, 2011 WL 4737909, at *3 (S.D. Fla. Oct. 07, 2011) (collecting cases stating that it is inappropriate to raise new arguments in a reply brief and stating that courts in this district generally do not consider these arguments). Nonetheless, the Court notes that appraisal requires the parties to "[d]isagree on the value of the property or the amount of loss."

---

[11] Defendant cites in its Reply, without further explanation, *Mizner Grand Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 09-82280-CIV, 2010 WL 11506039, at *4 (S.D. Fla. Oct. 12, 2010). *See* ECF No. [118] at 10. The pincite to the case does not appear to have any implications for the instant Motion. As such, Defendant's reliance on *Mizner* is unavailing.

ECF No. [1-3] at 46. As such, the Court considers Mr. Thomas' opinion on the valuation of the purported loss to be helpful in determining whether appraisal is warranted.[12]

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [97]**, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 21, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[12] As noted above, Mr. Thomas will not be permitted to offer his causation opinion, and any argument related to the helpfulness of Mr. Thomas' causation opinion is moot.