UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-24587-BLOOM/Otazo-Reyes

MONTEREY AT MALIBU BAY
CONDOMINIUM ASSOCIATION, INC.,

      Plaintiff,

v.

EMPIRE INDEMNITY INSURANCE
COMPANY,

      Defendant.

_____/

**OMNIBUS ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant Empire Indemnity Insurance Company's ("Defendant" or "Empire") Motion for Summary Judgment, ECF No. [94] ("Defendant's Motion"), and Plaintiff Monterey at Malibu Bay Condominium Association, Inc.'s ("Plaintiff" or "Monterey") Motion for Summary Judgment, ECF No. [96] ("Plaintiff's Motion") (collectively, "Motions"). The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion is granted in part and denied in part consistent with this Order. Plaintiff's Motion is denied.

## I.    BACKGROUND

### A.  *Monterey I*

On March 22, 2019, Plaintiff initiated its first action against Defendant in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. *See Monterey at Malibu Bay Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 1:19-cv-23353-LFL (S.D. Fla. 2019), ECF No. [1-2] at 2-5 ("*Monterey I*"). On August 12, 2019, Defendant removed the case to federal court. *Monterey I*,

ECF No. [1]. Plaintiff's Amended Complaint asserted a single count against Defendant for breach of contract, alleging that Plaintiff entered into an insurance policy agreement ("Policy") with Defendant for coverage of Plaintiff's condominium ("Property"). *Monterey I*, ECF No. [1-2] at 2-5. Plaintiff alleged that the Property was damaged during Hurricane Irma and that the damage incurred was a covered loss under the Policy. After receiving Plaintiff's coverage claim, Defendant made a partial payment, and Plaintiff alleged that Defendant breached the Policy by failing to fully indemnify Plaintiff for the total amount of its damages. *Id.* at 3. On August 27, 2020, Plaintiff filed a motion seeking voluntary dismissal of *Monterey I* without prejudice pursuant to Fed. R. Civ. P. 41(a)(2), which Defendant opposed. *Monterey I*, ECF Nos. [64], [67]. On October 15, 2020, Magistrate Judge Lauren Louis granted Plaintiff's motion and dismissed the case over Defendant's objection. *Monterey I*, ECF No. [87] at 7.

### B. *Monterey II*

On August 22, 2020, while *Monterey I* was still pending, Plaintiff filed a Petition for Declaratory Relief against Defendant, which was premised upon the same Policy, the same Property, the same loss resulting from Hurricane Irma, and the same ultimate amount of claimed damages. *Monterey at Malibu Bay Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 1:20-cv-23506-KMW (S.D. Fla. 2020), ECF No. [1] ("*Monterey II*"). On October 29, 2020, however, the court in *Monterey II sua sponte* dismissed the case without prejudice after the parties failed to timely file their joint conference report as ordered. *Monterey II*, ECF No. [19].

### C. *Monterey III*

Turning to the instant action, on November 6, 2020, Plaintiff re-filed its Petition for Declaratory Relief against Defendant, which asserted the same claims as those raised in *Monterey II*, seeking clarification of its rights under the Policy. ECF No. [1] ("*Monterey III*").

Regarding the instant Motions, Defendant filed its Motion, ECF No. [94], along with its corresponding Statement of Material Facts, ECF No. [95] ("Defendant's SMF"). Plaintiff filed its Opposition to Defendant's Motion, ECF No. [106] ("Plaintiff's MSJ Response"), together with its Opposition Statement of Material Facts, ECF No. [107] ("Plaintiff's SMF Response"). Defendant filed a Reply to Plaintiff's MSJ Response, ECF No. [116] ("Defendant's MSJ Reply").

Plaintiff filed its Motion, ECF No. [96], along with its corresponding Statement of Material Facts, ECF No. [101] ("Plaintiff's SMF"). Defendant filed its Opposition to Plaintiff's Motion, ECF No. [111] ("Defendant's MSJ Response"), and its Opposition to Plaintiff's SMF, ECF No. [112] ("Defendant's SMF Response"). Finally, Plaintiff filed a Reply to Defendant's MSJ Response, ECF No. [119] ("Plaintiff's MSJ Reply").

## II.   MATERIAL FACTS

Based on the parties' statements of material facts in support of and in opposition to the Motions, along with the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

### A.  The Policy

Empire issued Commercial Lines Policy number ECL9490651-02 to Monterey effective from March 2, 2017 to March 2, 2018. ECF Nos. [95] ¶ 1, [107] ¶ 1. The Policy states in relevant part:

**Duties In The Event Of Loss Or Damage**
**a.** You must see that the following are done in the event of loss or damage to Covered Property:
* * *
**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.
**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.
**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the

Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

ECF Nos. [95] ¶ 2, [107] ¶ 2, [72-1] at 39-40.

Additionally, the Policy states that Empire has the right to "[m]ake inspections and surveys at any time[.]" ECF Nos. [95] ¶ 4, [107] ¶ 4, [72-1] at 28.

### B. Hurricane Irma and Its Aftermath

On September 10, 2017, the Property, which consists of 30 buildings, was exposed to wind and rain from Hurricane Irma. ECF Nos. [95] ¶ 5, [107] ¶ 5. For all times relevant, Guarantee Management Services, Inc. ("Guarantee Management") was the property management company for Monterey. ECF Nos. [95] ¶ 6, [107] ¶ 6. Ms. Tracey Rubin ("Ms. Rubin") is and has been the President of Guarantee Management and the property manager for Monterey. ECF Nos. [95] ¶ 7, [107] ¶ 7. Ms. Rubin spoke to a landscaper after Hurricane Irma who reported fallen trees at the Property, and Ms. Rubin first visited the Property a few weeks after Hurricane Irma when she observed that the roof tiles were "out of place . . . everything moved over and slid." ECF Nos. [95] ¶ 7, [107] ¶ 7.

On September 27, 2017, Ms. Carla Diaz ("Ms. Diaz"), the assistant manager of Guarantee Management, sent an email to Ms. Rubin and Mr. Conrad Lopez ("Mr. Lopez"), the President of the Monterey Condominium Association, identifying six (6) units on the Property with roof leaks. ECF Nos. [95] ¶ 10, [107] ¶ 10. As of September 27, 2017, Monterey started "to see an uptick in

roof repair," but Monterey did not report these roof leaks to Empire. ECF Nos. [95] ¶ 11, [107] ¶ 11. Mr. Lopez testified that he did not think Monterey needed to notify Empire at that time, but does not know why. ECF Nos. [95] ¶ 12, [107] ¶ 12. As of November 2017, Mr. Lopez was growing concerned with the roof repairs, but Mr. Lopez and the Monterey Condominium Association did not discuss contacting Empire. ECF Nos. [95] ¶ 14, [107] ¶ 14.

Between approximately September 19, 2017, and April 5, 2018, Allied Roofing repaired roof leaks and broken roof tiles at the Property. ECF Nos. [95] ¶ 15, [107] ¶ 15. On March 2, 2018, Mr. Lopez, on behalf of Monterey, signed a No-Loss Statement stating that "to the best of our knowledge there have been no known or reported Property/Wind losses from 03/02/2017 to the present, including hurricane [*sic*] Irma." ECF Nos. [95] ¶ 16, [107] ¶ 16. In mid-2018, Mr. Cesar Marin ("Mr. Marin"), Monterey's Public Adjuster, hired Top Seal Services Corp. to inspect Monterey's roofs, and Mr. Marin retained Scott Thomas ("Mr. Thomas") to provide an estimate of the physical damage. ECF Nos. [95] ¶ 17, [107] ¶ 17.

### C.  Insurance Claim and Initial Claim Handling Process

On August 21, 2018, Mr. Marin notified Empire of Monterey's loss. ECF Nos. [95] ¶ 20, [107] ¶ 20. Mr. Marin reported that the Property had roof damage from Hurricane Irma. ECF Nos. [95] ¶ 20, [107] ¶ 20.

On August 21, 2018, Mr. Brian Schwartz ("Mr. Schwartz") from Empire emailed Mr. Marin to discuss Monterey's claim. ECF Nos. [95] ¶ 22, [107] ¶ 22. On August 24, 2018, Mr. Marvin Arlitz ("Mr. Arlitz") of Madsen, Kneppers & Associates, Inc. ("MKA") sent Mr. Marin an email scheduling the site inspection of the Property and asking Monterey to confirm the dates with the units that would require entry. ECF Nos. [95] ¶ 24, [107] ¶ 24.

On August 31, 2018, Mr. Scott Klaben ("Mr. Klaben"), the National General Adjuster from Empire, sent an email to Mr. Marin advising that Monterey's claim had been reassigned to him

and that MKA's inspection of the Property was scheduled for September 17, 2018. ECF Nos. [95] ¶ 30, [107] ¶ 30. Mr. Klaben also asked for copies of all repair invoices and damage estimates. ECF Nos. [95] ¶ 30, [107] ¶ 30.

Mr. David Boughton ("Mr. Boughton") of MKA inspected the Property on September 17, 18, and 19, 2018. ECF Nos. [95] ¶ 31, [107] ¶ 31. On September 21, 2018, Mr. Klaben sent Mr. Marin an email stating that MKA was not provided access to interior units with reported damage. ECF Nos. [95] ¶ 32, [107] ¶ 32. In his September 21, 2018 email, Mr. Klaben also stated that once MKA was informed of the full scope of claimed damages and received an estimate from American Premier Claim Consultants or Monterey, then MKA would like to "finalize the inspection request by returning to the site to ensure [Empire and MKA] observe and verify all conditions claims as a result of the loss event." ECF Nos. [95] ¶ 33, [107] ¶ 33. After MKA's inspection, Empire continued to investigate the claim. ECF No. [95] ¶ 35.[1]

On October 24, 2018, Mr. Klaben emailed Mr. Marin MKA's causation report and estimate of the damages. ECF Nos. [101] ¶ 9, [112] ¶ 9. In the email, Mr. Klaben wrote that the estimate was the "current estimated covered damages" and that no payment was forthcoming "at this time." ECF No. [101-1] at 4. Mr. Klaben also noted that Monterey and Empire may not agree with the estimate "at this time" and that MKA was "happy to continue the review of the claimed damages." *Id.*

On November 7, 2018, Mr. Thomas rendered his damage estimate totaling $34,410,280.73. ECF Nos. [95] ¶ 37, [107] ¶ 37. Mr. Lopez signed the proof of loss on November 9. ECF Nos. [95] ¶ 40, [107] ¶ 40. The year is not listed on the proof of loss, and Mr. Lopez testified that he does

---

[1] Plaintiff notes that although Defendant has maintained that Defendant continued to investigate the claim, Plaintiff disputes whether Defendant actually continued to investigate the claim. ECF [107] ¶ 35. However, the record establishes that Defendant continued to call and email Plaintiff to schedule another inspection of the Property, indicating that Defendant continued to investigate the claim. ECF No. [49-1] at 18, 40-41.

not know whether he signed the proof of loss in 2018 or 2019. ECF Nos. [95] ¶ 40, [107] ¶ 40. However, given that the same proof of loss was submitted to Empire on March 6, 2019, it is evident that Mr. Lopez signed the proof of loss on November 9, 2018. ECF Nos. [95] ¶ 40, [107] ¶ 40.

### D.  Partial Payment and Continued Claim Handling Process

On January 2, 2019, Empire paid $14,195.96 to Monterey for the undisputed amount of damages to Building 1. On January 28, 2019, Empire paid $1,298.84 to Monterey for the undisputed amount of damage to the fencing. ECF Nos. [95] ¶ 41, [107] ¶ 41.

Between September 2018 and February 2019, Mr. Klaben continued to call and email Mr. Marin in order to further discuss the claim and schedule another inspection of the Property. ECF Nos. [95] ¶ 42, [107] ¶ 42. On February 26, 2019, Mr. Klaben sent Mr. Marin a letter asking Monterey to send a proof of loss statement and a specific list of documents and reminding Monterey of its post-loss obligations. ECF Nos. [95] ¶ 44, [107] ¶ 44.

On March 6, 2019, Monterey submitted a proof of loss statement with iClaims estimates to Empire. ECF Nos. [95] ¶ 45, [107] ¶ 45. Monterey did not provide the actual cash value estimate or the documents that Empire had requested. ECF Nos. [95] ¶ 47, [107] ¶ 47.[2] On April 5, 2019, and June 18, 2019, Empire sent letters to Monterey's counsel again requesting the identified documents and a re-inspection of the Property and reminding Monterey of its post-loss obligations. ECF Nos. [95] ¶ 48, [107] ¶ 48.

### E.  Lawsuit, Appraisal, and Declination of Plaintiff's Claim

On June 7, 2019, Monterey's counsel informed Empire that Monterey had filed a lawsuit against Empire. ECF Nos. [95] ¶ 49, [107] ¶ 49. Subsequently, from February 17 to 21, and from 24 to 28, 2020, Empire's litigation experts, JS Held LLC ("JS Held") and Mr. James Brown ("Mr.

---

[2] Although the parties agree that Monterey did not provide the actual cash value estimate or the documents Empire requested, the parties dispute as to whether the proof of loss was deficient. ECF Nos. [95] ¶ 47, [107] ¶ 47.

Brown") of Wiss Janey Elstner Associates, Inc. ("WJE"), inspected the interior and exterior of the Property. ECF Nos. [101] ¶ 28, [112] ¶ 28. In the first week of August 2020, Monterey notified Empire that Monterey was invoking its right to appraisal. ECF Nos. [95] ¶ 50, [49-3] at 6.[3]

On November 17, 2020, after reviewing documents produced by Monterey in September 2020, Empire sent a letter to Monterey denying that Monterey was due any additional coverage beyond the $15,494.80 already issued by Empire to Monterey. ECF Nos. [95] ¶ 51, [107] ¶ 51. The November 17, 2020 letter further stated that additional coverage was forfeited because Monterey failed to comply with its post-loss obligations. ECF Nos. [95] ¶ 51, [107] ¶ 51. Empire's corporate representative, Mr. Steve Sherin ("Mr. Sherin"), subsequently testified that Empire's coverage determinations relied on Empire's retained experts. ECF Nos. [101] ¶ 46, [112] ¶ 46. Mr. Sherin testified that no one from Empire disagreed with the experts' causation determinations. ECF Nos. [101] ¶ 47, [112] ¶ 47.

## III.  LEGAL STANDARD

The standard of review on cross-motions for summary judgment does not differ from the standard applied when only one party files such a motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a

---

[3] Plaintiff disputes that it invoked the right to appraisal at that time and instead claims that it merely expressed its desire to invoke the right to appraisal once Empire had completed its investigation. ECF No. [107] ¶ 50. However, the Court held a hearing in which the Court inquired, in no uncertain terms, when the right to appraisal was first invoked. *See* ECF No. [49-3] ("Mr. Font, let me stop you. When is the first time that the Petitioner sought to invoke the appraisal provision within the policy? When?"). Plaintiff's counsel responded, "It was the first week of August [2020] that I conferred with counsel, Your Honor." *Id.* As such, the record establishes that Monterey invoked the right to appraisal in the first week of August 2020.

Case No. 20-cv-24587-BLOOM/Otazo-Reyes

reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

Initially, the moving party bears the "responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant

satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, *LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 322). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *See Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004). Indeed, even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

Additionally, "cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist." *Ga. State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 775 F.3d 1336, 1345-46 (11th Cir. 2015). Indeed, even where the issues presented on motions for summary judgment overlap, a court must consider each motion on its own merits, "resolving all reasonable inferences against the party whose motion is under consideration." *S. Pilot Ins. Co. v. CECS, Inc.*, 52 F. Supp. 3d 1240, 1243 (N.D. Ga. 2014) (citing *Am. Bankers Ins. Grp.*, 408 F.3d at 1331). In particular, where "the parties respond[] to

each respective summary judgment motion with disputes as to the 'undisputed' facts, add[]
'material facts' of their own, and then repl[y] with subsequent objections to the other party's
additional facts," the mere filing of cross motions for summary judgment is not conclusive. *Id.*
Thus, where the parties disagree as to the facts, summary judgment cannot be entered unless one
of the parties meets its burden of demonstrating that "there is no dispute as to any material facts
with the evidence and all inferences drawn therefrom viewed in the light most favorable" to the
non-moving party. *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983) (citing *M/V Nan
Fung*, 695 F.2d at 1296-97).

## IV.  DISCUSSION

### A.  Defendant's Motion

#### i.  Waiver of Post-Loss Obligation Defenses

Defendant argues that Plaintiff's request for appraisal should be denied because Plaintiff
materially breached several post-loss obligations in the Policy and Plaintiff cannot rebut the
presumption of prejudice that Defendant has suffered. *See* ECF No. [94] at 9. Defendant submits
that an insured's material breach of post-loss obligations relieves the insurer from its obligations
under the policy. *See id.* at 13 (citing *Amer. Integrity Ins. Co. v. Estrada*, 276 So. 3d 905, 914 (Fla.
3d DCA 2019)). Defendant further submits that under Florida law, courts must first consider
whether the insurer can demonstrate that the insured has materially breached a post-loss obligation.
*See* ECF No. [111] at 5 (citing *New South Comm., Inc. v. Houston Cas. Co.*, 835 F. App'x. 405,
412 (11th Cir. 2020) (citing *Estrada*, 276 So. 3d 905)). If so, prejudice to the insurer is presumed,
and the burden shifts to the insured to rebut the presumption of prejudice. *Id.*

Before the Court addresses whether Plaintiff's request for appraisal should be denied
because Plaintiff materially breached its post-loss obligations and because Plaintiff cannot rebut
the presumption of prejudice, the Court must first address whether Defendant has waived its right

to assert Plaintiff's breach of post-loss obligations as a defense. Defendant argues that it has not waived its right to assert Plaintiff's failure to comply with post-loss obligations as a defense and that the Court should grant summary judgment in Defendant's favor in this regard. *See* ECF No. [94] at 18. According to Defendant, Defendant denied coverage of Plaintiff's insurance claim on November 17, 2020. *See id.* Because the November 17, 2020 declination was the only denial of coverage, Plaintiff was required to comply with all post-loss obligations prior to that date. *See id.*

Plaintiff argues that Defendant waived noncompliance with post-loss obligations as a defense because Defendant concluded its adjustment in September 2018 and issued payment in January 2019. *See* ECF No. [106] at 1. Plaintiff primarily draws on *Dorra v. Rockhill Ins. Co.*, 19-CV-20169, 2019 WL 4261454, at *5 (S.D. Fla. Sept. 9, 2019), where the court found that the insurer's acknowledgement of coverage and payment under the policy constituted a waiver of post-loss obligations. *See* No. [106] at 2-3. Plaintiff submits that Defendant acknowledged coverage in part and denied coverage in part when Defendant issued a partial payment to Plaintiff in January 2019. *See id.* at 3.

The Court agrees with Defendant. Under Florida law, failure to comply with all post-loss obligations bars the insured's right to appraisal. *See People's Trust Ins. Co. v. Ortega*, 306 So. 3d 280, 284 (Fla. 3d DCA 2020) (citing *U.S. Fid. Guar. Co. v. Romay,* 744 So. 2d 467, 471 (Fla. 3d DCA 1999) ("The insured must comply with all of the policy's post-loss obligations before the appraisal clause is triggered.")). However, "[i]t is well-settled law that when an insurer agrees upon liability by accepting payment on a claim, the insurer has waived further policy obligations of the insured." *Dorra*, 2019 WL 4261454, at *5 (citing *Bear v. New Jersey Ins. Co.*, 138 Fla. 298, 189 So. 252 (Fla. 1939); *English & Am. Ins. Co. v. Swain Groves, Inc*., 218 So. 2d 453 (Fla. 4th DCA 1969); *Llerena v. Lumbermens Mut. Cas. Co*., 379 So. 2d 166 (Fla. 3d DCA 1980)). Further, "[w]hen an insurer denies in advance that it has any liability under the policy coverage, the formal

filing of a proof of loss becomes, . . . a useless and unnecessary thing that would accomplish nothing." *Bryant v. GeoVera Specialty Ins. Co.*, 271 So. 3d 1013, 1021 (Fla. 4th DCA 2019) (citing *Keel v. Indep. Life & Acc. Ins. Co.,* 99 So. 2d 225, 227 (Fla. 1957)).

Here, if Defendant denied coverage, then Plaintiff's noncompliance with post-loss obligations would not be a valid defense given Defendant's effective waiver of post-loss obligations through its denial. However, the Court determines that there is no genuine issue of material fact that the October 24, 2018 letter did not constitute a denial of Plaintiff's claim. In the October 24, 2018 letter, Mr. Klaben wrote that the estimate was the "current estimated covered damages" and that no payment was forthcoming "at this time." ECF No. [101-1] at 4. Mr. Klaben also noted that while the parties may not agree with the estimate "at this time," MKA was "happy to continue the review of the claimed damages." *Id.* Further, although Defendant paid Plaintiff insurance proceeds for discrete areas of reported property damage on January 2, 2019, namely Building 1 and the damaged fencing, the undisputed facts establish that Defendant continued its investigation of the disputed areas. Between September 2018 and February 2019, Mr. Klaben continued to call and email Mr. Marin in order to further discuss the claim and schedule another inspection of the Property. ECF Nos. [95] ¶ 42, [107] ¶ 42. On February 26, 2019, Mr. Klaben sent Mr. Marin a letter asking Monterey to submit a proof of loss and a specific list of documents and reminding Monterey of its post-loss obligations. ECF Nos. [95] ¶ 44, [107] ¶ 44. On April 5, 2019, and June 18, 2019, Empire sent letters to Monterey's counsel again requesting a re-inspection of the Property and the production of the identified documents and reminding Monterey of its post-loss obligations. ECF Nos. [95] ¶ 48, [107] ¶ 47. Therefore, Defendant has demonstrated that there is no genuine dispute that Defendant continued its investigation of Plaintiff's claim and that Defendant did not make a decision regarding coverage until November 17, 2020. ECF Nos. [95] ¶ 51, [107] ¶ 51.

In addition, the Court is not persuaded by Plaintiff's references to Defendant's "so-called" investigation as if to suggest that Defendant was not meaningfully investigating the claim. *See* ECF No. [106] at 15. Based on the undisputed facts demonstrating Defendant's repeated attempts to investigate Plaintiff's claim after issuing a partial payment, Defendant has met its burden of establishing that there is no genuine dispute as to whether there was an ongoing investigation. Because there was an ongoing investigation, Defendant did not waive post-loss obligations before its final declination on November 17, 2020. ECF Nos. [95] ¶ 51, [107] ¶ 51. Further, *Dorra* is distinguishable because the insurer in that case never requested the insured's compliance with any post-loss conditions, yet the undisputed facts here case establish that Defendant repeatedly did so. *See* 2019 WL 4261454, at *5. As such, Defendant is entitled to judgment as a matter of law that Defendant did not waive compliance with post-loss obligations.

In sum, the Court grants summary judgment in favor of Defendant with regard to Defendant's claim that it never waived compliance with post-loss obligations as a defense.

### ii. Breach of Post-Loss Obligations

Having established that Defendant did not waive compliance with post-loss obligations as a defense, the next issue the Court must address is whether Plaintiff materially breached its post-loss obligations, and if so, whether Plaintiff can rebut the presumption of prejudice that Defendant has suffered. *See New South*, 835 F. App'x. at 412 (citing *Estrada*, 276 So. 3d 905). In terms of material breaches, Defendant argues that Plaintiff failed to provide prompt notice, failed to provide documents and permit a re-inspection, and disclosed an incomplete proof of loss statement. *See* ECF No. [94] at 9-16. The Court addresses each argument in turn before turning to whether Plaintiff can rebut the presumption of prejudice for any breaches that can be established as a matter of law.

## 1. Prompt Notice

First, Defendant argues that Plaintiff did not provide notice as required by the Policy and the Court can determine that Plaintiff's notice was untimely under the Policy. *See* ECF No. [94] at 10-13. Defendant submits that Plaintiff knew of the damage since October 3, 2017, and delayed notifying Defendant of the damage until September 21, 2018. *See id.* at 12. Defendant argues that the eleven-month delay constitutes late notice as a matter of law. *See id.* Plaintiff responds that the promptness of notice is an issue of fact that cannot be determined on a motion for summary judgment. *See* ECF No. [106] at 5. Plaintiff further submits that there is a question of fact as to whether Hurricane Irma was the event that triggered the timing of the notice requirement. *See id.* at 5-6.

The Court agrees with Defendant. Although Plaintiff submits that "the issue of whether an insured provided 'prompt' notice generally presents an issue of fact," ECF No. [106] at 5 (quoting *Laquer v. Citizens Property Ins. Corp.*, 167 So. 3d 470, 474 (Fla. 3d DCA 2015)), Defendant rightly argues that "when the undisputed factual record establishes notice is so late that no reasonable juror could find it timely, Florida courts will deem the notice untimely as a matter of law," ECF No. [94] at 11 (quoting *Ramirez v. Scottsdale Ins. Co.*, No. 20-CV-22324, 2021 WL 5050184, at *4 (S.D. Fla. Oct. 29, 2021)); *see also Clena Invs., Inc. v. XL Specialty Ins.*, Case No. 10-cv-62028, 2012 WL 1004851, at *4 (S.D. Fla. Mar. 26, 2012).

The Court finds *Tamiami Condo. Warehouse Plaza Ass'n, Inc. v. Markel Am. Ins. Co.* to be instructive. There, the court addressed a similar motion for summary judgment regarding a seven-month delay of notice to the insurer. The court found as a matter of law that the insured's seven-month delay in reporting its insurance claim did not constitute prompt notice. *See* No. 19-CV-21289, 2020 WL 1692177, at *2 (S.D. Fla. Feb. 24, 2020) ("On the record as a whole, which reveals that Plaintiff knew about damage to the property from the storm but failed to report it for

seven months, there is no genuine dispute concerning whether the notice was prompt.") (citing *Yacht Club on the Intracoastal Condominium Ass'n v. Lexington Ins. Co.*, 599 F. App'x. 875 (11th Cir. 2015)).

Here, it is undisputed that as of September 27, 2017, Plaintiff saw "an uptick in roof repair," but did not report the roof leaks to Defendant. ECF Nos. [95] ¶ 11, [107] ¶ 11. Mr. Lopez testified that he did not think Monterey needed to notify Empire at that time but he does not know why. ECF Nos. [95] ¶ 12, [107] ¶ 12. Mr. Lopez testified that as of November 2017, he was growing concerned with the roof repairs, but Mr. Lopez and the Monterey Condominium Association still did not discuss contacting Empire. ECF Nos. [95] ¶ 14, [107] ¶ 14. Meanwhile, between approximately September 19, 2017, and April 5, 2018, Plaintiff had Allied Roofing repair roof leaks and broken roof tiles at the Property. ECF Nos. [95] ¶ 15, [107] ¶ 15. The earliest Defendant was notified of any damage on the Property was on August 21, 2018, when Mr. Marin notified Empire of Monterey's purported loss, nearly one year after Hurricane Irma and well after Plaintiff began to see an uptick in roof repair. ECF Nos. [95] ¶ 20, [107] ¶ 20. The Court recognizes that it must draw all reasonable inferences from the undisputed evidence in favor of the non-movant, who is Plaintiff in this instance, and Plaintiff may not have been aware of the extent of the damage immediately after Hurricane Irma. Plaintiff disputes whether Hurricane Irma was the triggering event for the timing of the notice requirement. *See* ECF No. [106] at 6. Nonetheless, even after assuming the triggering event is not the hurricane itself, the undisputed facts establish that Plaintiff waited for at least nine (9) months after becoming concerned with the roofs in November 2017 and hiring others to repair the roofs shortly after Hurricane Irma. Such a delay constitutes late notice as a matter of law. *See Tamiami*, 2020 WL 1692177, *2.

The Court further notes that Ms. Rubin testified that she "didn't want to file a claim if it was unnecessary." ECF No. [95-2] at 129. However, courts have determined that "an insured's

good faith belief that the damage is trivial or not covered by the policy is insufficient to justify non-compliance with the policy's notice provision." *Kendall Lakes Towers Condo. Ass'n, Inc. v. Pacific Ins. Co., Ltd.*, 2012 WL 266438, \*4 (S.D. Fla. Jan. 30, 2012); *see also Yacht Club*, 599 F. App'x at 880 ("Whatever concerns the Board had about the extent of damage and its deductible are not relevant under Florida law. Prompt notice is not excused because an insured might not be aware of the full extent of damage or that damage would exceed the deductible."). Therefore, Ms. Rubin's explanation does not excuse Plaintiff's late notice.

Accordingly, the Court finds as a matter of law that Plaintiff did not comply with the prompt notice requirement. The Court considers whether Plaintiff can rebut the presumption of prejudice caused by the late notice after addressing other post-loss obligations.

### 2.   Failure to Provide Documents and Permit Re-Inspection

Defendant also argues that Plaintiff failed to provide requested documents and permit a re-inspection to investigate Plaintiff's insurance claim. *See* ECF No. [94] at 13-15. Plaintiff responds that there is a question of fact as to whether Plaintiff's alleged failure to produce the requested documents and permit a re-inspection is a material breach of its post-loss obligations. *See* ECF No. [106] at 14-15.

The Court agrees with Plaintiff. Florida courts have established that "for an insurer to successfully establish a coverage defense based upon an insured's failure to satisfy post-loss obligations such that an insured forfeits coverage under a policy, the insurer must plead and prove that the insured has *materially* breached a post-loss policy provision." *Estrada*, 276 So. 3d at 912 (emphasis added). "[W]here an insured cooperates to some extent, a fact question remains as to whether the condition is breached to the extent of denying the insured any recovery under the policy." *State Farm Florida Ins. Co. v. Figueroa*, 218 So. 3d 886, 888 (Fla. 4th DCA 2017) (quoting *Solano v. State Farm Fla. Ins. Co.*, 155 So.3d 367, 370 (Fla. 4th DCA 2014)); *see also*

*Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1309 (S.D. Fla. 2014) ("Whether a particular breach is material raises an issue of fact.").

Here, the record indicates that Plaintiff did provide some documentation and an opportunity to inspect the Property at least once before the start of this instant action. *See* ECF Nos. [95] ¶¶ 31, 45, [107] ¶¶ 31, 45. Thus, although Defendant argues that Plaintiff's alleged noncompliance breached the Policy, materiality of the breach is a question of fact and the Court denies summary judgment in favor of Defendant on this matter. The Court need not address the issue of prejudice from Plaintiff's purported failure to provide documents and permit a re-inspection.

### 3. Incomplete Proof of Loss Statement

Defendant argues that Plaintiff also failed to provide a complete proof of loss. *See* ECF No. [94] at 15-16. Plaintiff responds that Plaintiff submitted its proof of loss, and whether the submitted proof of loss constituted a material breach of Plaintiff's post-loss obligations is a question of fact. *See* ECF No. [106] at 15-17. Plaintiff also notes that Defendant raises Plaintiff's alleged failure regarding the proof of loss for the first time in Defendant's Motion and insurers have a duty to inform the insured of a possible forfeiture of coverage before it can enforce the penalty of forfeiture for noncompliance. *See id.* at 16.

For similar reasons stated above, the Court agrees with Plaintiff. The materiality of an alleged breach stemming from an incomplete proof of loss is a question of fact. *See Himmel v. Avatar Prop. & Cas. Ins. Co.*, 257 So. 3d 488, 493 (Fla. 4th DCA 2018) (holding there was a question of fact on material breach despite the insurer's argument that the insured failed to use the insurer's proof of loss form and failed to include information about insured's personal property loss); *Heslope v. Universal Prop. & Cas. Ins. Co.*, No. 4D20-1280, 2021 WL 5348902, at *1 (Fla. 4th DCA 2021) (holding that when an insured submits a sworn proof of loss, the issue of whether the submitted document substantially complies with policy obligations is a question of fact that

precludes the entry of summary judgment). Here, the undisputed facts establish that Plaintiff sent a proof of loss statement with iClaims estimates. ECF Nos. [95] ¶ 45, [107] ¶ 45. Whether that proof of loss statement is deficient and constitutes a material breach is a question of fact. As such, the Court denies summary judgment in favor of Defendant on this matter. The Court need not address the issue of prejudice from Plaintiff's purported failure to provide a complete proof of loss statement.

### 4. Presumption of Prejudice

The Court now turns to whether the lack of prompt notice, which is the only noncompliance with post-loss obligations that the Court finds as a matter of law, prejudiced Defendant. Defendant argues that it was prejudiced by Plaintiff's breach because (1) Defendant was not able to determine which repairs were completed before the claim was reported; (2) Defendant was not provided an opportunity to inspect the Property and participate in the repairs after Hurricane Irma; and (3) Defendant was precluded from determining whether the alleged post-Irma damages were related to pre-existing issues with the roofs. *See* ECF No. [94] at 17. Defendant further argues that Plaintiff offers no evidence to rebut the presumption of prejudice. *See id.* at 17-18.

Plaintiff argues that it has presented sufficient evidence to rebut the presumption of prejudice and that the Court should deny summary judgment in favor of Defendant. *See* ECF No. [106] at 6-13. Plaintiff stresses that Defendant acknowledged coverage for some damage and issued partial payment without citing the lack of prompt notice, indicating that there was no prejudice from the lack of prompt notice. *See id.* at 6. Plaintiff further avers that to rebut the presumption of prejudice, an insured may submit evidence creating a disputed issue of fact on at least one factor of the four-factor test applied in *CMR Constr. & Roofing, LLC v. ASI Preferred Ins. Corp. See id.* at 8 (citing No. 19-cv-442-FtM-29MRM, 2021 WL 877560, at *4 (M.D. Fla. Mar. 9, 2021) (applying the four-factor test set forth in *PDQ Coolidge Formad, LLC v. Landmark*

*Am. Ins. Co*., 566 F. App'x 845, 849-50 (11th Cir. 2014))). The four-factor test set forth by the Eleventh Circuit in *PDQ* and applied in *CMR* states that the insured can rebut the presumption of prejudice by creating a dispute of fact as to (a) whether better conclusions could have been drawn without the delay in providing notice; (b) whether those conclusions could have been drawn more easily; (c) whether the repairs to the affected areas that took place in the interim would complicate an evaluation of the extent of the damage or the insured's efforts to mitigate its damages; or (d) whether an investigation conducted immediately following the occurrence would not have disclosed anything materially different from that disclosed by the delayed investigation. *See* 566 F. App'x at 849-50. Plaintiff argues that it has presented sufficient evidence as to carry its burden on any of the four factors. *See id.* at 8-13.

The Court first reiterates that Defendant's partial payment did not constitute an acceptance or denial of coverage given that Defendant made clear its continuing investigation of Plaintiff's claim as noted above. Nonetheless, the Court agrees with Plaintiff to the extent that Plaintiff has presented sufficient evidence to rebut the presumption of prejudice and raise a question of fact as to whether Defendant was prejudiced by the late notice.

The Court finds *CMR* to be instructive. *See* 2021 WL 877560, at *1. In that case, the court denied the insurer's motion for summary judgment because there was conflicting evidence regarding prejudice caused by the insured's delayed notice. *See id.* The court stated that the record contained conflicting evidence as to "whether better conclusions could have been drawn without the delay," "whether those conclusions could have been drawn more easily," "whether the repairs to the affected areas that took place in the interim would complicate an evaluation of the extent of the damage," and whether "an investigation conducted immediately following the occurrence would not have disclosed anything materially different from that disclosed by the delayed investigation." *Id.*

Similarly, in this case, Plaintiff set forth some evidence that Defendant's experts were able to arrive at their causation assessments despite Plaintiff's noncompliance. *See* ECF No. [106] at 9; *see also* ECF No. [96] at 4-13. The Court notes that the repairs that occurred before Defendant's inspection were documented with photographs depicting the location and limited nature of the repairs. *See* ECF Nos. [106] at 9, [95-2] at 240-42. Further, Plaintiff did not repair the veneer/stucco, windows, doors, railings, and light posts. *See* ECF No. [106] at 9. There were also no intervening hurricanes or tropical storms. *See* ECF No. [106] at 9 (citing ECF No. [95-2] at 470-558). Thus, Plaintiff has presented sufficient evidence to indicate that Defendant may not have suffered prejudice as a result of Plaintiff's delay in notifying Defendant of the damages. Put differently, Plaintiff has presented sufficient evidence to suggest that Defendant would not have drawn better conclusions or that Defendant's conclusions could have been drawn more easily without the untimely notice. It is also possible the repairs that took place in the interim did not complicate Defendant's evaluation of the extent of the damage given the photographs and limited repairs, and an investigation conducted immediately following Hurricane Irma may not have disclosed anything materially different.

Therefore, for the purposes of addressing Defendant's Motion, Plaintiff has presented sufficient evidence to rebut the presumption of prejudice and raise a question of fact as to whether Defendant was prejudiced. Defendant argues that Plaintiff cannot prove that when MKA and WJE inspected the Property, the condition of the Property was the same as the condition of the Property immediately after Hurricane Irma. However, the Court cannot weigh evidence in addressing Defendant's Motion. As such, the Court denies summary judgment on this matter.

### iii.  Plaintiff's Waiver of Right to Appraisal

Finally, Defendant argues that Plaintiff acted inconsistently with its right to seek appraisal and thereby waived its right to seek appraisal. *See* ECF No. [94] at 19-20 (citing *Tamiami Condo.*

*Warehouse Plaza Ass'n, Inc. v. Markel Am. Ins. Co.*, No. 19-CV-21289, 2019 WL 6130445, at *1 (S.D. Fla. Nov. 19, 2019); *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 F. App'x 189, 193 (11th Cir. 2021)). Defendant emphasizes that Plaintiff filed a breach of contract action, *Monterey I*, against Defendant and invoked its right to appraisal fifteen (15) months after litigating *Monterey I. See id.*

Plaintiff responds that an insured cannot seek appraisal until the insurer has completed its investigation or denies the insurance claim. *See* ECF No. [106] at 17-18. Because appraisal exists only to determine the amount of loss, and not whether coverage exists, a party cannot seek appraisal until the insurer admits or denies coverage. *See id.* (citing *Williams v. Citizen Prop. Ins. Co.*, 285 So. 3d 334, 335 (Fla. 4th DCA 2019)). Consequently, according to Plaintiff, because Defendant was still investigating Plaintiff's claim when Plaintiff filed its first lawsuit, Plaintiff could not have sought appraisal at that time and therefore did not act inconsistently. Plaintiff also argues that Defendant is judicially estopped from claiming that Plaintiff waived its right to appraisal because Defendant already took the position that Defendant had not completed its investigation of Plaintiff's claim in *Monterey I. Id.* at 19-20.

The Court agrees with Plaintiff to the extent that Plaintiff did not act inconsistently and waive its right to seek appraisal. First, courts have established that the right to an appraisal may be waived if a party maintains a position inconsistent with the appraisal remedy. *See Tamiami*, 2019 WL 6130445, *1; *CMR*, 843 F. App'x. at 193. However, the Eleventh Circuit has also determined that, "[u]nder Florida law, waiver is the voluntary and intentional relinquishment or abandonment of a known and existing right or privilege which, except for the waiver, the party would have enjoyed." *Pajcic v. Am. Gen. Life Ins. Co.*, 419 F. Supp. 2d 1380, 1382 (11th Cir. 2006) (citing *Raymond James Fin. Servs. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005)).

Case No. 20-cv-24587-BLOOM/Otazo-Reyes

Here, there is no genuine issue of material fact that when Plaintiff filed suit in *Monterey I* Defendant had not completed its claims investigation. *See* ECF Nos. [95] ¶ 42, [107] ¶ 42. As such, Plaintiff did not yet have a right to seek appraisal, and Plaintiff could not and did not act inconsistently in pursuing litigation and subsequently seeking appraisal after believing that Defendant denied coverage.

Further, the facts in *Tamiami*, 2019 WL 6130445, *1, and *CMR*, 843 F. App'x. at 193, are distinguishable from the instant case. In *Tamiami*, the court found that "Defendant has consistently admitted its acceptance of coverage of Plaintiff's claim, but in an amount that falls below Plaintiff's deductible." *Tamiami*, 2019 WL 6130445, at *3. As such, the insured in that case did have a right to appraisal and waived its right to appraisal by inconsistently litigating the case and seeking appraisal. *See id.* Similarly, in *CMR*, the insured brought a lawsuit and sought appraisal when it "had an estimate of repair costs that was different from the estimate [the insurer] had." 843 F. App'x at 193. In contrast, as noted above, here it is undisputed that when Plaintiff filed the lawsuit it did not yet have a coverage estimate from Defendant, and Defendant was in the process of investigating Plaintiff's claim. *See* ECF Nos. [95] ¶ 42, [107] ¶ 42. Therefore, Plaintiff did not have the right to seek appraisal and did not act inconsistently in not exercising a right that it did not yet have. As such, the Court denies summary judgment in favor of Defendant on this matter.[4]

### B.  Plaintiff's Motion

#### i.  Prejudice from Failure to Comply with Post-Loss Obligations

Plaintiff first argues that the Court should grant summary judgment in its favor because Defendant has not suffered prejudice from Plaintiff's alleged failure to comply with post-loss obligations. *See* ECF No. [96] at 3. Plaintiff submits that Defendant extended coverage in part and

---

[4] Having considered and dismissed Defendant's argument, the Court need not address the issue of judicial estoppel.

denied coverage in part by way of payment in January 2019 without any references to Plaintiff's alleged failure to comply, thus indicating that Defendant did not suffer any prejudice in its claimed investigation process. *See id.* at 3-4. Plaintiff extensively quotes the deposition testimonies of Mr. Sherin, Mr. Boughton, and Mr. Brown to argue that Defendant relied solely on its experts to render its coverage determination and that Defendant's experts were able to arrive at their causation assessments unhindered by any alleged failure to comply with post-loss obligations. *See id.* at 4-13.

Defendant responds that it did not deny coverage by making a partial payment. *See* ECF No. [111] at 6-7. Defendant further argues that it did suffer prejudice and that its coverage determination was not based solely on its experts' causation determinations. *See id.* at 12-13. Rather, Defendant contends that its coverage determination was also based on Plaintiff's failure to comply with post-loss obligations, which created substantial delays in Defendant's ability to investigate the claim. *See id.* at 12; *see also* ECF No. [116] at 8. That is, Defendant denied coverage partly because Plaintiff did not comply with post-loss obligations. *See* ECF No. [111] at 12. Further, Defendant maintains that WJE could only determine that Hurricane Irma "might" have been the cause of the damages because of Plaintiff's failure to comply with post-loss obligations. *Id.* at 13. WJE was unable to render a definitive causation opinion. *See id.* Defendant also reiterates the arguments raised in its Motion that Defendant was prejudiced by the untimely notice because Defendant was not able to determine which repairs were completed before the claim was reported, was not provided an opportunity to inspect the Property and participate in the repairs after Hurricane Irma, and was precluded from determining whether the alleged post-Irma damages were related to pre-existing issues with the roofs. *See id.* at 15. Defendant further argues that the Court should not only deny summary judgment in Plaintiff's favor but also grant summary judgment in

Defendant's favor because Plaintiff has failed to rebut the presumption of prejudice with the record evidence. *See id.* at 15.

The Court first reiterates that there is conflicting evidence as to whether Defendant was prejudiced by Plaintiff's failure to comply with at least one post-loss obligation, namely the failure to provide prompt notice. Plaintiff has presented sufficient evidence to rebut the presumption of prejudice and raise a genuine issue of material fact as to whether Defendant has suffered prejudice. However, Defendant has also presented evidence that it was prejudiced by the untimely notice because Defendant was not able to determine which repairs were completed before the claim was reported. The Court again refuses to weigh conflicting evidence and, on this record, declines to grant summary judgment either in favor of Plaintiff or Defendant on the issue of prejudice.[5]

Further, to the extent that Plaintiff argues that Defendant extended coverage in part and denied coverage in part by way of payment in January 2019, the Court notes that Defendant did not deny Plaintiff's claim and thereby waive Plaintiff's need to comply with post-loss obligations. In sum, the Court has already granted summary judgment in favor of Defendant on the issue of waiver of post-loss obligations and denies summary judgment in favor of Plaintiff on this matter.

### ii. Post-Loss Obligation Defenses Stated in Conclusory Form

Plaintiff also argues that Defendant's post-loss obligation defenses, namely Defendant's Twelfth and Fourteenth Affirmative Defenses, are stated in a conclusory manner without the necessary specificity. *See* ECF No. [96] at 13 (citing *Gottlieb & Gottlieb, PA. v. Crants*, 627 F. App'x. 920 (11th Cir. 2016)). Further, Plaintiff repeats its argument regarding prejudice by

---

[5] To the extent that Plaintiff quotes Defendant's corporate representative and Defendant's experts' depositions, the Court notes that the depositions suggest that Defendant's experts were not prejudiced by the lack of requested documents or delay in re-inspecting the Property, but the depositions do not suggest, much less establish, that Defendant was not prejudiced by Plaintiff's untimely notice. *See* ECF No. [96] at 4-13. The Court instead relies on Plaintiff's other evidence that raises a question of fact as to whether Defendant was prejudiced by the lack of timely notice as noted above.

claiming that the manner in which Defendant asserted its post-loss obligation defenses does not specify the materiality of any breach or the resulting prejudice. *See id.* at 14.

Defendant responds that Plaintiff's reliance on *Gottlieb*, 627 F. App'x. 920, is misplaced. *See* ECF No. [111] at 9. According to Defendant, *Gottlieb* considered the application of Rule 8(c), which states that a party must affirmatively state its defenses when responding to a complaint. *See id.* In *Gottlieb,* the defendant generally pled that the plaintiff's "claims are barred by the nonperformance of a condition precedent." *See id.* (quoting 657 F. App'x at 921). The defendant in that case did not raise his specific defense of conditional delivery in his answer or during the course of discovery. The question before the court in *Gottlieb*, therefore, was whether the defendant satisfied the pleading requirements of Rule 8 by generally pleading nonperformance of a condition precedent as opposed to specifically pleading conditional delivery. The court held that "[i]n deciding waiver issues under Rule 8(c) . . . [the court] examine[s] whether a plaintiff had notice of the unpled defense or was prejudiced by lack of notice." *Id.* at 923 (citing *Hassan v. U.S. Postal Serv.,* 842 F.2d 260, 263 (11th Cir. 1998)). The court also stated that a plaintiff has notice of an affirmative defense when the defendant raises the unpled defense in pretrial filings or in a motion for summary judgment. *Id.* Defendant argues that Plaintiff was not prejudiced because Defendant answered interrogatories regarding Defendant's affirmative defenses and described the precise nature of the breach of post-loss conditions in its answers. *See* ECF Nos. [95-13], [95-14], [95-15].

The Court agrees with Defendant. As an initial matter, similar to the district court in *Gottlieb & Gottlieb, P.A. v. Crants*, No. 8:14-CV-895-T-33MAP, 2015 WL 7759462, at *3 (M.D. Fla. Dec. 2, 2015), the Court can consider whether affirmative defenses that are not pled with particularity can be deemed waived. In this case, the record evidence clearly indicates that, unlike the defendant in *Gottlieb*, 2015 WL 7759462, at *3, Defendant answered interrogatories regarding

Defendant's affirmative defenses and described the precise nature of Plaintiff's untimely notice and Defendant's resulting prejudice from the untimely notice. *See* ECF Nos. [95-13], [95-14], [95-15]. Therefore, Plaintiff was not prejudiced by Defendant stating its post-loss obligation defenses in conclusory form. As such, the Court denies summary judgment on this matter.[6]

### iii. Rejection of Demand for Appraisal on an "All or Nothing" Basis

Plaintiff avers that even if there is a coverage dispute as to certain items or areas of damage, Defendant is precluded from arguing that appraisal is not appropriate on an "all or nothing" basis. *See* ECF No. [96] at 13. Plaintiff argues that since appraisal is the contracted means of resolving a dispute over the amount of damages, once coverage has been determined for a part of Plaintiff's claim, appraisal over the valuation dispute is appropriate, even if there is a coverage dispute as to the remainder of Plaintiff's claim. *See id.* at 17. Plaintiff submits that there is long-standing legal precedent establishing that appraisal is appropriate for a portion of the claim even if there is a coverage dispute as to the remainder of the claim. *Id.* at 17 (citing *Fisher v. Certain Interested Underwriters at Lloyds Subscribing to Contract No. 242/99*, 930 So. 2d 756, 759-60 (Fla. 4th DCA 2006); *Fla. Ins. Guar. Ass'n v. Olympus Ass'n*, 34 So. 3d 791 (Fla. 4th DCA 2010); *In Liberty American Insurance Co. v. Kennedy*, 890 So. 2d 539, 541 (Fla. 2d DCA 2005)).

Defendant responds that there is no valuation dispute, and as a result, an appraisal is not warranted. *See* ECF No. [111] at 15-17. Defendant stresses that it denied Plaintiff's claim in its entirety in November 2020. *See id.* at 16. As such, Defendant argues that there is no longer a

---

[6] While arguing, unavailingly, that Plaintiff is entitled to summary judgment because Defendant's post-loss obligation defenses are raised in a conclusory manner, Plaintiff raises an unrelated argument that Defendant's partial payment obviates the need for compliance with post-loss obligations and cites *Bryant v. GeoVera Specialty Ins. Co.*, 271 So. 3d 1013, 1021 (Fla. 4th DCA 2019). *See* ECF No. [96] at 15-17. The Court need not address the argument again, but notes that unlike the defendant in *Bryant* who denied coverage on grounds other than compliance with a post-loss obligation thereby waiving post-loss obligation as a defense, *see* 271 So. 3d at 1021, Defendant did not deny coverage and continued its investigation and repeatedly reminded Plaintiff of its post-loss obligations. As such, Plaintiff needed to comply with its post-loss obligations, and Defendant never waived its defense of failure to comply with post-loss obligations.

Case No. 20-cv-24587-BLOOM/Otazo-Reyes

valuation dispute that would justify appraisal over the disputed amount of damages. *See id.* at 16-17 (citing *Merrick Pres. Condo. Ass'n, Inc. v. Cypress Prop. & Cas. Ins. Co.*, 315 So. 3d 45, 49 (Fla. 4th DCA 2021) (holding that the trial court must resolve all underlying coverage disputes prior to ordering an appraisal where the insurer has "wholly denied" coverage)).

First, the Court notes that Defendant did not "wholly deny" coverage. The undisputed facts establish that on November 17, 2020, Empire denied that Monterey was due any additional coverage for the loss beyond the $15,494.80 it had paid for Building 1 and the damaged fencing. ECF Nos. [95] ¶ 51, [107] ¶ 51. In other words, Defendant admitted coverage for Building 1 and the damaged fencing in November 2020. Since Defendant did not "wholly deny" coverage, appraisal may be appropriate. *See Merrick*, 315 So. 3d at 49. Next, the record establishes that there is a valuation dispute as it relates to Building 1 since Defendant's partial payment was much lower than Plaintiff's estimated valuation of the damage. *See* ECF No. [95-6] at 221-47. Further, as Plaintiff rightly argues, some courts have determined that appraisal is appropriate with regard to any portion of the claim for which coverage has been determined. *See, e.g.*, *Fisher*, 930 So. 2d at 759-60. Therefore, the Court is not persuaded by Defendant's argument that there is no covered claim and no need for appraisal. At the very least, appraisal may be appropriate for the valuation dispute regarding Building 1.

However, the Court cannot direct the parties to appraisal at this time because appraisal over any valuation dispute, including any valuation dispute regarding Building 1, requires resolution of the aforementioned issues that may or may not preclude appraisal. That is, the trier of fact must first resolve the materiality of any breach of post-loss obligations and also determine whether any material breaches resulted in prejudice. If there are any material breaches that resulted in prejudice, Plaintiff's failure to comply with post-loss obligations would foreclose appraisal. As such, the

Case No. 20-cv-24587-BLOOM/Otazo-Reyes

Court denies summary judgment on this matter and declines to direct the parties to appraisal at this time.

## V.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment, **ECF No. [94]**, is **GRANTED IN PART AND DENIED IN PART**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. [96]**, is **DENIED**.

3. Defendant's Motion for Status Conference, **ECF No. [121]**, is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 28, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

29